**KAZEROUNI LAW GROUP, APC**
Abbas Kazerounian, Esq. (SBN: 249203)
ak@kazlg.com
Mona Amini, Esq. (SBN: 296829)
mona@kazlg.com
245 Fischer Avenue, Unit D1
Costa Mesa, California 92626
Telephone: (800) 400-6808
Facsimile: (800) 520-5523

*Attorneys for Plaintiffs,*
Madelene Stanley and Katherine Kelsch

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MADELENE STANLEY and KATHERINE KELSCH, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>TERRA TECH CORP.; and MEDIFARM LLC,<br><br>Defendants. | Case No.:<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE TELEPHONE CONSUMER PRETECTION ACT, 47 U.S.C. §§ 227, ET SEQ. (TCPA)**<br><br>**JURY TRIAL DEMANDED** |

//
//
//
//
//
//
//
//
//

- 1 -
CLASS ACTION COMPLAINT

# INTRODUCTION

1. Plaintiffs Madelene Stanley ("Stanley") and Katherine Kelsch ("Kelsch") (collectively referred to as the "Plaintiffs"), individually and on behalf of all others similarly situated, bring this action for legal and equitable remedies resulting from the illegal actions of Defendants Terra Tech Corp. ("Terra") and MediFarm, LLC ("MediFarm") (collectively referred to as the "Defendants") in transmitting unsolicited, autodialed SMS or MMS text messages, *en masse*, to Plaintiff's cellular device and the cellular devices of numerous other individuals nationwide, in violation of the Telephone Consumer Protection Act, 47 U.S.C. §§ 227, *et seq*. (the "TCPA").

2. Both Defendants operate in the cannabis industry. Based upon Plaintiffs' information and belief, Terra is a parent-company to MediFarm, which is a branch in Terra's business family tree. To promote its services, Defendants engage in aggressive unsolicited marketing, harming thousands of consumers in the process.

3. Through this action, Plaintiffs seek injunctive relief to halt Defendants' illegal conduct, which has resulted in the invasion of privacy, harassment, aggravation, and disruption of the daily life of thousands of individuals. Plaintiffs also seek statutory damages on behalf of themselves and members of the Class, and any other available legal or equitable remedies.

# JURISDICTION AND VENUE

4. This Court has federal question subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §§ 227, et seq. ("TCPA").

5. Personal jurisdiction and venue are proper in this district because each Defendant directs, markets, and provides its business activities to this district, because Defendant resides in this judicial district; and because Defendants directed the text messages at issue to Plaintiff Stanley who resides in this district.

## PARTIES

6. Plaintiff Stanley is a natural person who, at all times relevant to this action, is a resident of Gardena, California.

7. Plaintiff Kelsch is a natural person who, at all times relevant to this action is a resident of Houston, Texas.

8. Defendant Terra Tech Corp. is a Nevada corporation that does business in California as 2040 Main Street Corp, with a corporate a headquarters located at 2040 Main Street, Suite 225, Irvine, CA 92614. Defendant directs, markets, and provides its business activities throughout the states of Nevada, California, Texas and nationwide.

9. Defendant MediFarm LLC is a Nevada corporation with a headquarters located at 2040 Main Street, Suite 225, Irvine, CA 92614. Defendant directs, markets, and provides its business activities throughout the state of Nevada, California, Texas, and nationwide.

10. Upon information and belief, at all times relevant to this action, Defendants own and/or operate several Blüm dispensaries in the State of Nevada, including the Blüm dispensary which was located at 3650 S Decatur Blvd., Las Vegas, Nevada.

11. Unless otherwise indicated, the use of Defendants' names in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, vendors, and insurers of the Defendants.

## THE TELEPHONE CONSUMER PROTECTION ACT OF 1991

12. To address consumer complaints regarding certain telemarketing practices, Congress enacted the TCPA, 47 U.S.C. § 227, in 1991. The TCPA prohibits, *inter alia*, the use of automated telephone equipment, or "autodialers," to make any call, including sending a text message, to a wireless number absent an emergency or the "prior express consent" of the party called. And in the case of calls

or text messages that constitute "advertisements" or "telemarketing," as defined by applicable regulations, the TCPA requires the "prior express written consent" of the called party before initiating such calls or texts using an autodialer or prerecorded voice.

13. According to findings by the Federal Communication Commission ("FCC"), which is vested with authority to issue regulations implementing the TCPA, autodialed calls and texts are prohibited because receiving them is a greater nuisance and more invasive than live solicitation calls and they can be costly and inconvenient. The FCC also recognized that wireless customers are charged for such incoming calls and texts whether they pay in advance or after the minutes or texts are used.

14. Further, the FCC has issued rulings and clarified that consumers are entitled to the same consent-based protections for text messages as they are for calls to wireless numbers. *See Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 952 (9th Cir. 2009) (The FCC has determined that a text message falls within the meaning of "to make any call" in 47 U.S.C. § 227(b)(1)(A)); *Toney v. Quality Res., Inc.*, 2014 WL 6757978, at *3 (N.D. Ill. Dec. 1, 2014) (Defendant bears the burden of showing that it obtained Plaintiff's prior express consent before sending him the text message). (emphasis added).

15. One of the most prevalent bulk advertising methods employed by companies today involves the use of "Short Message Services" (or "SMS"), which is a system that allows for the transmission and receipt of short text messages to and from wireless telephones. Another similar service called "Multimedia Messaging Services" (or "MMS") is based upon and similar to the SMS system, but also permits the transmission of photos and videos via text message. According to a recent study, "[s]pam isn't just for email anymore; it comes in the form of unwanted text messages of all kinds - from coupons to phishing schemes - sent directly to user's cell phones."[1]

---

[1] Amanda Lenhart, *Cell Phones and American Adults*, Pew Research Center (Sept. 2, 2010), https://www.pewresearch.org/internet/2010/09/02/cell-phones-and-american-adults/

- 4 -

CLASS ACTION COMPLAINT

16. SMS and MMS text messages are directed to a wireless device through a telephone number assigned to the device. When an SMS or MMS text message is successfully transmitted, the recipient's wireless phone alerts the recipient that a message has been received. SMS and MMS text messages are received virtually anywhere in the world. Unlike more conventional advertisements, SMS and MMS message advertisements can actually cost their recipients money because wireless phone users must pay their wireless service providers either for each text message they receive or incur a usage allocation deduction to their text messaging or data plan, regardless of whether the message is authorized. Moreover, the transmission of an unsolicited SMS or MMS text message to a cellular device is distracting and aggravating to the recipient and intrudes upon the recipient's seclusion.

17. As recently held by the United States Court of Appeals for the Ninth Circuit: "[u]nsolicited telemarketing phone calls or text messages, by their nature, invade the privacy and disturb the solitude of their recipients. A plaintiff alleging a violation under the TCPA 'need not allege any additional harm beyond the one Congress has identified.'" *Van Patten v. Vertical Fitness Grp.*, No. 14-55980, 2017 U.S. App. LEXIS 1591, at *12 (9th Cir. May 4, 2016) (quoting *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016) (emphasis original)).

### FACTUAL ALLEGATIONS

18. Plaintiff Stanley is, and at all times mentioned herein was, the subscriber and user of the cellular telephone number ending in 7037 (the "7037 Number"), which was at all times mentioned herein assigned to a cellular telephone service as specified in 47 U.S.C. § 227(b)(l)(A)(iii).

19. Plaintiff Kelsch is, and at all times mentioned herein was, the subscriber and user of the cellular telephone number ending in 3483 (the "3483 Number"), which was at all times mentioned herein assigned to a cellular telephone service as specified in 47 U.S.C. § 227(b)(l)(A)(iii).

20. Sometime in December 2019, Plaintiffs entered into Defendants' Blüm dispensary located at 3650 S. Decatur Blvd. in Las Vegas, Nevada to browse selections of Defendants' products.

21. Upon entering, Defendants' representative told Plaintiffs that they were required to provide personal information that included their cell phone numbers if they wanted to enter the store. Defendants explained to Plaintiffs that they needed such information given the nature of their business of dispensing lawful marijuana.

22. Plaintiffs were forced to provide their cell phone numbers among other personal information, however, at no point during this exchange or any transaction did Plaintiffs provide Defendants with the express consent, authorization, or permission to send Plaintiffs advertising text messages to their cell phones.

23. Defendants have sent numerous telemarketing text messages to Plaintiff Stanley's 7037 Number and Plaintiff Kelsch's 3483 Number, including but not limited to the following text messages, beginning in or around the month of May 2020. Examples of Defendants' unsolicited text messages to Plaintiffs are shown below.




24. Defendants' text messages were transmitted to Plaintiffs' cellular telephones, and within the time frame relevant to this action.

25. Defendants' text messages constitute telemarketing because they were sent to Plaintiffs to advertise and encourage the purchase of property, goods, or services for Defendants' benefit and commercial profit.

26. Plaintiff Stanley received these subject texts within this judicial district and, therefore, at least one of the Defendants' violations of the TCPA occurred within this district. Upon information and belief, Defendants caused other text messages to be sent to individuals residing or located within this judicial district and in other states nationwide.

27. At no point in time did Plaintiffs provide Defendants with their express written consent to be contacted using an ATDS.

28. Plaintiff Stanley is the subscriber and sole user of the 7037 Number and is financially responsible for phone service to the 7037 Number.

29. Plaintiff Kelsch is the subscriber and the sole user of the 3483 Number and is financially responsible for phone service to the 3483 Number.

30. Plaintiff Kelsch has been registered with the National Do Not Call Registry since December 16, 2004.

31. The impersonal and generic nature of Defendants' text messages is indicative of the fact that Defendant utilized an ATDS in transmitting the messages. *See Jenkins v. LL Atlanta, LLC*, No. 1:14-cv-2791-WSD, 2016 U.S. Dist. LEXIS 30051, at *11 (N.D. Ga. Mar. 9, 2016) ("These assertions, combined with the generic, impersonal nature of the text message advertisements and the use of a short code, support an inference that the text messages were sent using an ATDS.") (citing *Legg v. Voice Media Grp., Inc.*, 20 F. Supp. 3d 1370, 1354 (S.D. Fla. 2014) (plaintiff alleged facts sufficient to infer text messages were sent using ATDS; use of a short code and volume of mass messaging alleged would be impractical without use of an ATDS); *Kramer v. Autobytel, Inc.*, 759 F. Supp. 2d 1165, 1171 (N.D. Cal. 2010)

(finding it "plausible" that defendants used an ATDS where messages were advertisements written in an impersonal manner and sent from short code); *Hickey v. Voxernet LLC*, 887 F. Supp. 2d 1125, 1130; *Robbins v. Coca-Cola Co.*, No. 13-CV-132-IEG NLS, 2013 U.S. Dist. LEXIS 72725, 2013 WL 2252646, at *3 (S.D. Cal. May 22, 2013) (observing that mass messaging would be impracticable without use of an ATDS)).

32. The text messages to Plaintiff Stanley appear to have originated from the telephone numbers (385) 489-0421, (430) 562-0338, (430) 562-0334, and (765) 379-8967, which upon information and belief are phone numbers owned, operated, and utilized by Defendants or on behalf of the Defendants for Defendants' benefit.

33. The text messages to Plaintiff Kelsch appear to have originated from the telephone numbers (430) 562-0614, (430) 502-6838, (202) 900-6321, and (408) 785-4825, which upon information and belief are phone numbers owned, operated, and utilized by Defendants or on behalf of the Defendants for Defendants' benefit.

34. The numbers used by Defendants and/or their agents to send text messages to both Plaintiffs are known as a "long code," a standard 10-digit code that enables Defendants to send SMS text messages *en masse*, while deceiving recipients into believing that the message was personalized and sent from a telephone number operated by an individual.

35. Upon information and belief, Defendants utilized a combination of hardware and software systems to send the text messages at issue in this case. The systems utilized by Defendants have the capacity to store telephone numbers using a random or sequential number generator, and to dial such numbers from a list without human intervention.

36. To send the text messages, Defendants used a messaging platform (the "Platform") that permitted Defendants to transmit thousands of automated text messages without any human involvement.

CLASS ACTION COMPLAINT

37. The Platform has the capacity to store telephone numbers, which capacity was in fact utilized by the Defendants.

38. The Platform has the capacity to generate sequential numbers, which capacity was in fact utilized by the Defendants.

39. The Platform has the capacity to dial numbers in sequential order, which capacity was in fact utilized by the Defendants.

40. The Platform has the capacity to dial numbers from a list of numbers, which capacity was in fact utilized by the Defendants.

41. The Platform has the capacity to dial numbers without human intervention, which capacity was in fact utilized by the Defendants.

42. The Platform has the capacity to schedule the time and date for future transmission of text messages, which occurs without any human involvement.

43. To transmit the messages at issue, the Platform automatically executed the following steps:

    a) The Platform retrieved each telephone number from a list of numbers in the sequential order the numbers were listed;

    b) The Platform then generated each number in the sequential order listed and combined each number with the content of Defendants' message to create "packets" consisting of one telephone number and the message content;

    c) Each packet was then transmitted in the sequential order listed to an SMS aggregator, which acts an intermediary between the Platform, mobile carriers (e.g. AT&T), and consumers.

    d) Upon receipt of each packet, the SMS aggregator transmitted each packet – automatically and with no human intervention – to the respective mobile carrier for the telephone number, again in the sequential order listed by the Defendants. Each mobile carrier then sent the message to its customer's mobile telephone.

44. The above execution these instructions occurred seamlessly, with no human intervention, and almost instantaneously. Indeed, the Platform is capable of transmitting thousands of text messages following the above steps in minutes, if not less.

45. Further, the Platform "throttles" the transmission of the text messages depending on feedback it receives from the mobile carrier networks. In other words, the Platform controls how quickly messages are transmitted depending on network congestion. The Platform performs this throttling function automatically and does not allow a human to control the function.

46. Defendants' text messages to Plaintiffs included a purported opt-out notice; however, despite Plaintiffs' multiple "STOP" texts to Defendants, so that they would no longer receive unwanted text messages from Defendants. Although Plaintiffs' "STOP" text messages expressly revoked any purported prior consent Defendants may have perceived they had from Plaintiffs, Defendants' unsolicited and unauthorized text messages to Plaintiffs continued without their consent and without regard for Defendants' lack of required prior express consent.

47. Defendants' unsolicited text messages caused Plaintiffs actual harm, including invasion of his privacy, aggravation, annoyance, intrusion on seclusion, trespass, loss of utility of Plaintiffs' cellular telephones, and conversion. Defendants' text messages have also inconvenienced Plaintiffs and caused distraction and disruption to their daily lives.

48. Defendants' unsolicited text messages personally affected Plaintiffs and caused Plaintiffs actual harm because they were a nuisance, aggravating, invasive and intruded upon Plaintiffs' privacy and seclusion. Further, Plaintiffs wasted unnecessary time reviewing Defendants' unwanted messages and replying "STOP."

49. Furthermore, Defendants' text messages took up memory on the Plaintiffs' cellular phones. The cumulative effect of unsolicited text messages like Defendants' poses a real risk of ultimately rendering the phone unusable for text

messaging purposes as a result of the phone's memory being taken up. See https://www.consumer.ftc.gov/articles/0350-text-message-spam#text (finding that text message solicitations like the ones sent by Defendant present a "triple threat" of identity theft, unwanted cell phone charges, and slower cell phone performance).

50. Defendants' text messages also can slow cell phone performance by taking up space on the recipient phone's memory. See https://www.consumer.ftc.gov/articles/0350-text-message-spam#text (finding that spam text messages can slow cell phone performance by taking up phone memory space).

51. Defendants' text messages to Plaintiffs were not communications for emergency purposes as defined by 47 U.S.C. § 227(b)(1)(A)(i).

52. Defendants' and/or their agent(s) automated text messages to Plaintiffs constituted "advertisements" and/or "telemarketing" material within the meaning of the applicable TCPA regulations. This is because Defendants sent the messages in order to advertise and market its goods and services, for the purpose of ultimately selling such goods and services to Plaintiff and other Class members for commercial profit.

53. Defendants' unsolicited text messages to Plaintiff and others similarly situated were sent pursuant to a common telemarketing scheme for which Defendants, or any agent or intermediary acting on their behalf, did not comply with, and thus violated the telephone solicitation restrictions in 47 C.F.R. § 64.1200(f).

54. The TCPA was intended to give individuals control over how and where they receive telephonic communications. When Defendant sent such text messages to consumers without their consent, it fails to address or respect the limitations imposed by the TCPA. In doing so, Defendants invades Plaintiff and similarly situated persons' privacy and violate the spirit and intent behind the TCPA.

55. Through the aforementioned conduct, Defendants violated the TCPA, 47 U.S.C. §§ 227, et seq.

## CLASS ALLEGATIONS

56. Plaintiffs brings this case as a class action pursuant to Fed. R. Civ. P. 23, on behalf of themselves and all others similarly situated.

57. Plaintiffs bring this case on behalf of the Class defined as follows:

> All persons in the United States who, within four years prior to the filing of this action, (1) were sent a text message by or on behalf of the Defendants, (2) using an automatic telephone dialing system, (3) for the purpose of promoting or selling Defendants' goods and services, (4) without obtaining prior express consent of the recipient.

58. Plaintiffs also brings this case on behalf of the Sub-Class defined as follows:

> All persons in the United States who from four years prior to the filing of this action (1) were sent a text message by or on behalf of the Defendants; (2) more than one time within any 12-month period; (3) where the person's telephone number had been listed on the National Do Not Call Registry for at least thirty days; (4) for the purpose of promoting or selling Defendants' products and services, (5) without obtaining prior express written consent of the recipient

59. Defendants and its employees or agents are excluded from the Class and the Sub-Class. Plaintiffs do not know the number of members in the Class and the Sub-Class, but believes the Class members number in the several thousands, if not more.

### NUMEROSITY

60. Upon information and belief, Defendants have placed automated calls to cellular telephone numbers belonging to thousands of consumers throughout the United States without their prior express consent. The members of the Class and the Sub-Class. Therefore, the class members are believed to be so numerous that joinder of all members is impracticable.

61. The exact number and identities of the members of the Class and the Sub-Class are unknown at this time and can only be ascertained through discovery.

- 12 -
CLASS ACTION COMPLAINT

Identification of the class members is a matter capable of ministerial determination from Defendant's call records.

### COMMON QUESTIONS OF LAW AND FACT

62. There are numerous questions of law and fact common to members of the Class which predominate over any questions affecting only individual members of the Class. Among the questions of law and fact common to the members of the Class and the Sub-Class are:

  a) Whether Defendants sent non-emergency text messages to Plaintiffs' and class members' cellular telephones using an ATDS;

  b) Whether Defendants can meet their burden of showing that it obtained prior express written consent to make such text messages;

  c) Whether Defendants' conduct was knowing and willful;

  d) Whether Defendants are liable for damages, and the amount of such damages; and

  e) Whether Defendants should be enjoined from such conduct in the future.

63. The common questions in this case are capable of having common answers. If Plaintiffs' claim that the Defendants routinely transmits text messages to telephone numbers assigned to cellular telephone services is accurate, Plaintiffs and the class members will have identical claims capable of being efficiently adjudicated and administered in this case.

### TYPICALITY

64. Plaintiffs' claims are typical of the claims of the class members, as they are all based on the same factual and legal theories.

### PROTECTING THE INTERESTS OF THE CLASS MEMBERS

65. Plaintiffs are representatives who will fully and adequately assert and protect the interests of the Class and the Sub-Class, and has retained competent counsel highly experienced in class action litigation. Accordingly, Plaintiffs are

CLASS ACTION COMPLAINT

adequate representatives and will fairly and adequately protect the interests of the Class and Sub-Class.

### PROCEEDING VIA CLASS ACTION IS SUPERIOR AND ADVISABLE

66. A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit, because individual litigation of the claims of all members of the Class and the Sub-Class is economically unfeasible and procedurally impracticable. While the aggregate damages sustained by the Class and the Sub-Class are in the millions of dollars, the individual damages incurred by each member of the Class and the Sub-Class resulting from Defendant's wrongful conduct are too small to warrant the expense of individual lawsuits. The likelihood of individual class members prosecuting their own separate claims is remote, and, even if every member of the Class and the Sub-Class could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases.

67. The prosecution of separate actions by members of the Class and the Sub-Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendants. For example, one court might enjoin the Defendants from performing the challenged acts, whereas another may not. Additionally, individual actions may be dispositive of the interests of the Class and the Sub-Class, although certain class members are not parties to such actions.

### COUNT I

### Violations of the TCPA, 47 U.S.C. § 227(b)

### (On Behalf of Plaintiffs, the Class, and the Sub-Class)

68. Plaintiffs re-allege and incorporate the foregoing allegations as if fully set forth herein.

69. It is a violation of the TCPA to make "any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system … to any telephone number assigned to a … cellular telephone service …." 47 U.S.C. § 227(b)(1)(A)(iii).

70. Defendants – or third parties directed by Defendants – used equipment having the capacity to dial numbers without human intervention to make non-emergency telephone calls to the cellular telephones of Plaintiffs and the other members of the Class defined below.

71. These calls were made without regard to whether or not Defendants had first obtained express permission from the called party to make such calls. In fact, Defendants did not have prior express consent to call the cell phones of the Plaintiffs and the other members of the putative Class and the Sub-Class when its calls were made.

72. Defendants have, therefore, violated § 227(b)(1)(A)(iii) of the TCPA by using an automatic telephone dialing system to make non-emergency telephone calls to the cell phones of Plaintiffs and the other members of the putative Class and the Sub-Class without their prior express written consent.

73. As a result of Defendants' conduct and pursuant to 47 U.S.C. § 227(b)(3)(B) of the TCPA, Plaintiffs and each of the other members of the putative Class and the Sub-Class were harmed and are each entitled to $500.00 in statutory damages for each and every violation of the TCPA.

74. Plaintiffs and the members of the Class and the Sub-Class are also entitled to injunctive relief against future unauthorized telephonic communications from Defendants pursuant to 47 U.S.C. § 227(b)(3).

75. Plaintiffs also seek an award of attorney's fees and costs on behalf of themselves individually and on behalf of the members of the Class and Sub-Class.

## COUNT II

### Knowing and/or Willful Violation of the TCPA, 47 U.S.C. § 227(b)

**(On Behalf of Plaintiffs, the Class, and the Sub-Class)**

76. Plaintiffs re-allege and incorporate the foregoing allegations as if fully set forth herein.

77. At all times relevant, Defendants knew or should have known that its conduct as alleged herein violated the TCPA.

78. Defendants knew that they did not have prior express consent to make these calls, and knew or should have known that its conduct was a violation of the TCPA.

79. Defendants knew that they did not have prior express consent to make these calls, and knew or should have known that it was using equipment that at constituted an automatic telephone dialing system. The violations were therefore willful or knowing.

80. Because Defendants knew or should have known that Plaintiffs and the class members had not given prior express consent to receive its autodialed calls, the Court should treble the amount of statutory damages available to Plaintiffs and the other members of the putative Class pursuant to § 227(b)(3) of the TCPA.

81. As a result of Defendants' violations, Plaintiffs and each of the members are entitled to an award of $1,500.00 in statutory damages, for each and every violation of the TCPA, pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

82. Plaintiffs and the members of the Class and the Sub-Class are also entitled to injunctive relief against future unauthorized telephonic communications from Defendants pursuant to 47 U.S.C. § 227(b)(3).

83. Plaintiffs also seek an award of attorney's fees and costs on behalf of themselves individually and on behalf of the members of the Class and Sub-Class.

## COUNT III

### Violation of the TCPA, 47 U.S.C. §§ 227, et seq.

**(On Behalf of Plaintiff and the Do Not Call Registry Sub-Class)**

84. Plaintiffs re-allege and incorporate the foregoing allegations as if fully set forth herein.

85. The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

86. 47 C.F.R. § 64.1200(e), provides that § 64.1200(c) and (d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers."[2]

87. 47 C.F.R. § 64.1200(d) further provides that "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity."

88. Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c).

89. Defendants violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff Kelsch and the Sub-Class of Do Not Call Registry Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

---

[2] *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003) Available at https://apps.fcc.gov/edocs_public/attachmatch/FCC-03-153A1.pdf

90.  Defendants violated 47 U.S.C. § 227(c)(5) because Plaintiff Kelsch and the Sub-Class of Do Not Call Registry Class received more than one telephone call in a 12-month period made by or on behalf of Defendants in violation of 47 C.F.R. § 64.1200, as described above.

91.  As a result of Defendants' conduct as alleged herein, Plaintiff Kelsch and the Do Not Call Registry Sub-Class suffered actual damages and, under section 47 U.S.C. § 227(c), are entitled, inter alia, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

92.  To the extent Defendants' misconduct is determined to be willful and knowing, Plaintiffs respectfully request the Court to award treble damages for Plaintiff Kelsch and the members of the Do Not Call Registry Sub-Class.

93.  Plaintiffs also seek an award of attorney's fees and costs on behalf of themselves individually and on behalf of the members of the Class and Sub-Class.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of themselves and the Class and the Sub-Class, prays for the following relief:

a) An order certifying this case as a class action on behalf of the Class and the Sub-Class as defined above, and appointing Plaintiffs as the representatives of the Class and the Sub-Class and confirming Plaintiffs' counsel as Class Counsel;

b) An order declaring that Defendants' actions, as set out above, violate the TCPA;

c) An award of actual and statutory damages for Plaintiffs and each member of the Class and the Sub-Class;

d) As a result of Defendants' violations of 47 U.S.C. §§ 227, et seq., Plaintiffs seek for themselves and each member of the Class and the Sub-Class $500.00 in statutory damages for each and every violation pursuant to 47 U.S.C. § 277(b)(3)(B);

e) As a result of Defendants' knowing and/or willful violations of 47 U.S.C. §§ 227, et seq., Plaintiffs seek for themselves and each member of the Class and the Sub-Class treble damages, as provided by statute, up to $1,500.00 for each and every violation pursuant to 47 U.S.C. § 277(b)(3)(B) and § 277(b)(3)(C);

f) Injunctive relief pursuant to 47 U.S.C. § 227(b)(3)(A) prohibiting such conduct and violations of the TCPA in the future;

g) An award of attorneys' fees and costs to counsel for Plaintiffs and the Class and the Sub-Class pursuant to, *inter alia*, California Code of Civil Procedure § 1021.5;

h) Post-judgment interest as permitted by applicable law; and

i) Any such other further and other relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs, on behalf of themselves and the putative class, hereby demand a trial by jury pursuant to the Seventh Amendment and Federal Rule of Civil Procedure 38(b) on all claims so triable.

Dated: January 6, 2021                             Respectfully submitted,

**KAZEROUNI LAW GROUP, APC**

By:   *s/ Abbas Kazerounian*
         ABBAS KAZEROUNIAN, ESQ.
         MONA AMINI, ESQ.
         *Attorneys for Plaintiffs*